STATE OF WEST VIRGINIA *v.* EARL FOLTZ

(No. 8969)

Submitted January 10, 1940.   Decided January 23, 1940.

*McCauley & McCauley,* for plaintiff in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

HATCHER, JUDGE:

Earl Foltz, aged seventeen years, charged with stealing a certain rifle of the value of $30.00, belonging to R. L. Orndorff, was found guilty as charged, and sentenced to confinement in the penitentiary.

The state made the following case:   A rifle and other guns were stolen from Orndorff's store the night of January 6, 1939, by Lee Shoemaker and two brothers. The Shoemakers were first cousins of Earl.   His home was visited by officers of the law in search of the Shoemakers.   He was not there at the time, but later, about noon of February 11, 1939, was met and questioned by the officers.   In answer, he said he had seen the Shoemaker boys a week before; they were not armed; he had never seen them with any of the guns stolen from Orndorff, and they had never proposed to sell or give him any guns or have him sell any for them.   Some time during the afternoon of the same day, Earl sold and delivered this rifle to Jess Rohrbaugh for $10.00, the terms of this sale

having been agreed upon a week or so before. The officers located the rifle in possession of Rohrbaugh and arrested Earl. He then said he had purchased the rifle in January from Lee Shoemaker for $15.00 and a watch. Orndorff has delt extensively in guns. This was a used rifle, secured in trade. He estimated its value before the theft at $35.00, and when exhibited to the jury, at $27.00, because of damages suffered after the theft.

Earl himself did not testify. A witness for the defense stated that Lee Shoemaker, in company with his brothers, offered to sell him the rifle for $15.00 cash. Another such witness stated that he heard Lee, again accompanied by his brothers, agree to sell it to Earl for $5.00 and a watch, which Earl then said was worth $5.00. Each of these witnesses said that Lee claimed to have bought the rifle from a man named May; one admitted knowing that the Shoemaker boys were dodging the officers, and the other that they were "wanted" and "everyone" knew it.

After the jury had deliberated awhile, the foreman reported to the court that the jury was "confused" because the indictment charged grand larceny and the evidence related to receiving stolen goods. Whereupon the court, after directing the jury to pay particular attention to the reading of the first instruction, as being "on that point", reread all the instructions to the jury. The deliberations of the jury continued, and it still being unable to agree on a verdict, asked the court "If found guilty can you give a jail sentence, if not what penalty does this carry"? The court then instructed the jury to the effect that under the evidence it would be warranted in finding one of only two verdicts, guilty as charged in the indictment, or not guilty, and that a verdict of guilty would be a conviction of grand larceny which was punishable by confinement in the penitentiary from one to ten years.

Counsel for defendant advance the contention that the verdict is unwarranted because the evidence does not show the defendant knew the rifle had been stolen. While this is not shown affirmatively, we are of opinion that it could be legitimately inferred from the evidence.

The first instruction reread to the jury submitted the state's case, and explained that the indictment would sustain a conviction upon proof that stolen goods were knowingly received. Counsel do not object to the substance of the instruction, but contend it was over-emphasized by the court's remark. We are of opinion, on account of the reported confusion of the jury on the problem this instruction should have solved, that this contention is not well taken.

The state was permitted to prove the details of the Orndorff store robbery, the subsequent breaking into of another building by the Shoemakers, where Lee was killed and the other two apprehended, armed with Orndorff guns other than the rifle. Counsel contend that since defendant was closely akin to the Shoemakers and had been in touch with them at times when they were eluding arrest, much of such evidence tended to confuse and prejudice the jury against him. We are of opinion this contention is well taken. The state should have confined its proof to the theft of the rifle and its acquisition by defendant under such circumstances that he knew or should have known it had been stolen.

The effect of the final instruction was that the court, as a matter of law, found the value of the rifle to be more than twenty dollars. Counsel contend that the value was a jury question. We are of opinion that this contention is well taken. The rifle, being a used gun, had no established sale price; there was testimony of its sale and offers of sale at less than $20.00. The conditions under which all of this occurred might be taken as not indicating the true value of the rifle. But the rifle was exhibited to the jury and it was for the jury, not the court, to estimate the weight of this testimony in connection with the jury's inspection of the rifle.

The judgment is reversed, the verdict set aside, and the accused awarded a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*